United States District Court
Southern District of Texas

**ENTERED**

August 06, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT                    SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Allan Eugene, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Civil Action H-18-3980 |
| Lorie Davis, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

## Memorandum and Recommendation

Allan Eugene is serving life in prison for murder. (*See* D.E. 12-23 at 65–66.) Eugene filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 1.) Lorie Davis has moved for summary judgment. (D.E. 13.) The court recommends that Davis's motion for summary judgment be granted and Eugene's petition be denied with prejudice.

### 1. Background

On July 24, 2004, Allan Eugene and Richard Sepulveda got into an argument in the parking lot of a neighborhood store. After the argument, Eugene retrieved his gun from his vehicle, a silver Chevy Impala. He confronted Sepulveda. Sepulveda tried to drive away. He turned onto the street and dragged Eugene. Eugene shot Sepulveda. Sepulveda died from the gunshot wound.

The police found a bullet and a necklace near Sepulveda's car. (*See* D.E. 12-6 at 18, 151.) The police swabbed the necklace for DNA and ran the sample through its database. (*See* D.E. 12-6 at 152–53.) Analysis of DNA from the necklace returned an unknown male's DNA profile. (*See* D.E. 12-7 at 27.)

The police interviewed Eugene. He denied any involvement and claimed that the necklace did not belong to him. (*See* D.E. 12-6 at 158–60.) Eugene admitted that he drove a 2002 Chevy Impala. (*See* D.E. 12-6 at 162.) The District Attorney at the time decided not to pursue a search warrant for Eugene's DNA sample. (*See* D.E. 12-6 at 158–61.) Without a sample of Eugene's DNA to compare with the DNA profile developed from the necklace, the case went cold. (D.E. 12-6 at 163–64.)

Years later, in 2014, Sepulveda's daughter called the Cold Case Unit of the Harris County Sheriff's Office (HCSO) to ask about the status of her father's murder investigation. (*See* D.E. 12-6 at 177–78.) The HCSO reopened the investigation. Detectives interviewed Eugene's ex-girlfriend, who identified the necklace found near Sepulveda's car as Eugene's. (*See* D.E. 12-6 at 186; D.E. 12-8 at 9–10.) Detectives discovered that in 2004, after Sepulveda was shot, Eugene was stopped for a defective license plate. (*See* D.E. 12-6 at 185.) During that stop, the police recovered a pistol from his car. (*See* D.E. 12-6 at 185.) A firearms expert tested the gun and concluded that Eugene's gun had fired the bullet recovered from Sepulveda's car. (D.E. 12-7 at 89–96.) A detective secured a search warrant, interviewed Eugene, and obtained a buccal swab. (*See* D.E. 12-6 at 189–90; D.E. 12-7 at 103–05.) The DNA profile obtained from the necklace matched Eugene's. (*See* D.E. 12-7 at 39.)

On February 24, 2015, Eugene was indicted with the murder of Richard Sepulveda. (D.E. 12-1 at 23.) Eugene pleaded not guilty and requested a jury trial. (*See* D.E. 12-1 at 86; D.E. 12-5 at 7.)

## 2. *Trial and Procedural Posture*

Eugene was tried by a jury in the 177th District Court of Harris County, Texas. (*See* D.E. 12-3–12-8.) The State's witnesses included HCSO detectives Sergeants Mark Reynolds and Eric Clegg. Sergeant Reynolds was an investigator at the HCSO's Homicide Unit who handled the 2004 investigation, and Sergeant Clegg was an investigator at the HCSO's Cold Case Unit who handled the re-opened investigation. (*See* D.E. 12-6 at 140–44, 173, 177–79.) The

State also called an eyewitness, two forensic DNA analysts who examined DNA evidence in 2004 and 2014, a medical examiner, a firearms examiner, Eugene's ex-girlfriend, and Sepulveda's wife. (D.E. 12-3 at 3–9; D.E. 12-5–12-8.)

Eugene declined to testify. (D.E. 12-3 at 3–9; D.E. 12-8 at 19–21.) The defense rested without putting on any evidence. (*See* D.E. 12-8 at 19–21.) At closing, Eugene's counsel argued that Sepulveda's car dragged Eugene at high speed, and Eugene shot Sepulveda in self-defense. (*See* D.E. 12-8 at 39–40.)

The jury found Eugene guilty and sentenced him to life in prison. (D.E. 12-8 at 55; D.E. 12-11 at 24–25; D.E. 12-23 at 65–66.)

The Fourteenth Court of Appeals of Texas affirmed Eugene's conviction. *Eugene v. State*, 528 S.W.3d 245 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Eugene did not file a petition for discretionary review.

Eugene filed a state application for writ of habeas corpus challenging his conviction. (D.E. 12-23 at 5–26.) The trial court entered findings of fact and conclusions of law recommending that habeas relief be denied. (D.E. 12-25 at 23–29.) The Texas Court of Criminal Appeals (TCCA) denied Eugene's application "[b]ased on the trial court's findings of fact as well as [the TCCA's] independent review of the entire record." *Ex Parte Eugene*, No. WR-88,834-01, 2019 WL 962488 (Tex. Crim. App. 2014) (unpublished).

3.  *Standard of Review for § 2254 Cases*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal writ of habeas corpus is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" the Supreme Court, or "a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's factual findings are presumed correct, and the applicant bears the burden to overcome that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). "As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018). AEDPA requires the court to defer to the state habeas court's express and implicit findings of fact and conclusions of law. *See Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

Where the highest state court denies a habeas petition without accompanying reasons, the court "looks through" to the last reasoned state-court decision on the merits and gives a rebuttable presumption that the higher state court denied the petition in reliance of the lower court's reasoned opinion. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Langley v. Prince*, 926 F.3d 145, 159 (5th Cir. 2019) (applying *Sellers* to defer to the state appellate court's findings).

### 4. Analysis

#### A. Ineffective assistance of counsel claims

##### (1) Legal standard

Ineffective assistance of counsel claims are reviewed to determine whether counsel's performance was both objectively deficient and actually prejudicial to the defendant. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993). To establish deficient performance, the petitioner must overcome the strong presumption that the attorney's conduct fell within a wide range of objectively reasonable professional assistance. *See Strickland*, 466 U.S. at 689. To establish prejudice, the petitioner is required to show that, but for counsel's unprofessional errors, there is a reasonable probability that the

result of the criminal proceeding would have been different. *See Strickland*, 466 U.S. at 694. If the petitioner makes an insufficient showing on one of the components of the inquiry, the Court need not address the other. *See id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018). It is "all the more difficult" where, as here, a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Mejia*, 906 F.3d at 315. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 315 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

### (2) Trial counsel

#### (a) Failure to investigate preindictment delay

Eugene argues that his trial counsel failed to investigate the preindictment delay, which he says would have supported a motion to quash the indictment. Sepulveda was murdered in 2004. Eugene was indicted in 2014. (*See* D.E. 12-1 at 23.) Eugene claims that the State had no reason to delay his indictment for ten years and that his counsel should have moved to quash the indictment.

The TCCA did not make findings of fact or conclusions of law on the issue of trial counsel's investigation of the pre-indictment delay. The last reasoned state court decision was issued by the Fourteenth Court of Appeals of Texas, which found that Eugene was not denied effective assistance of his trial counsel. *See Eugene*, 528 S.W.3d at 249. The state court found that no evidence supported Eugene's claim that his counsel failed to investigate filing a motion to quash the indictment for preindictment delay. *Id.* at 248–49. The state court also found that the trial counsel could have concluded that it was strategically unsound for counsel to move to quash the indictment, based on other sources of information. *See id.* at 248–49.

Eugene has not shown that the state court's findings are based on an unreasonable determination of facts. Eugene relies on conclusory statements that his counsel failed to investigate preindictment delay. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("Although *pro se* habeas petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.") There is no evidence in the record that supports his claim.

Eugene has not shown that the state court's findings are contrary to clearly established Federal law. The Fifth Amendment Due Process Clause provides a limited protection against tactical preindictment delay. *See United States v. Marion*, 404 U.S. 307, 324 (1971). To show a due process violation on the basis of preindictment delay, the petitioner must show that the State delayed the indictment to gain tactical advantage or for some other illicit purpose and that he was prejudiced due to the delay. *See United States v. Lovasco*, 431 U.S. 783, 790 (1977) (distinguishing a lawful, investigative delay from an unlawful, tactical delay); *see also United States v. Crouch*, 84 F.3d 1497, 1508 (5th Cir. 1996) (collecting cases). Here, Eugene does not allege, and the record does not show, that the State intentionally delayed indicting Eugene for tactical reasons. The case went cold because there was insufficient evidence to proceed. This claim lacks merit.

(b)*Failure to interview eyewitnesses*

Eugene makes a related argument that his trial counsel failed to locate and interview four eyewitnesses who were present at the grocery store when he shot Sepulveda. Eugene claims that he was prejudiced by the trial counsel's failure to locate and interview four eyewitnesses who would have supported his claim of self-defense.

The TCCA did not make findings of fact or conclusions of law on the issue of trial counsel's investigation of the eyewitnesses. The last reasoned state court decision was issued by the Fourteenth Court of Appeals of Texas, which found that Eugene failed to show his trial counsel did not investigate the witnesses. *See Eugene*, 528

S.W.3d at 248–49. On direct appeal, Eugene had offered a document—his trial counsel's request for reimbursement for amounts above the presumptive maximum in out-of-court preparation hours—as evidence that his trial counsel failed to investigate eyewitnesses. *See id.* at 248. The state court found that "[t]he document does not address whether counsel attempted to make any type of investigation." *Id.*

The state court also found that even if trial counsel did not investigate eyewitnesses, trial counsel could have determined that investigation of eyewitnesses would be futile, based on other information that counsel already had. *See Eugene*, 528 S.W.3d at 249. The state court did not find that the trial counsel rendered ineffective assistance to Eugene. *See id.*

The state court decision is not based on an unreasonable determination of facts. The State's eyewitness, Roberto Carias, testified that on the night of the shooting he witnessed a long argument between a black male driving a silver Chevrolet and another driver in a black Mercedes. (D.E. 12-6 at 80–92.) Carias testified that the driver in the black Mercedes never exited his car as he argued with the black male. (D.E. 12-6 at 86.) Carias saw the black male return to his car, retrieve a gun, and return to the black Mercedes. (D.E. 12-6 at 87–88.) As the Mercedes tried to drive away, the black male chased the Mercedes, and held onto its door. (D.E. 12-6 at 90–92.) The black male continued to hold onto the car as the Mercedes exited the parking lot and turned onto a street. Both disappeared from Carias's view. (D.E. 12-6 at 129.)

Carias testified that he was with three other people at the parking lot on the night of the incident. (D.E. 12-6 at 78.) Sargeant Clegg testified that he located one of the three potential eyewitnesses, but that person did not cooperate with the investigation. (D.E. 12-6 at 182.)

Based on this record, there is no evidence that other eyewitnesses would have been available to testify at trial. Eugene

does not say what their testimony would have been and whether their testimony would have helped him.

The state court decision is not contrary to clearly established Federal law. "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). To demonstrate the required *Strickland* prejudice in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Absent affidavits or similar evidence from an uncalled witness, Eugene's claim is entirely speculative and fails to raise an issue of ineffective assistance of counsel. *See United States v. Curtis*, 769 F.3d 271, 276 (5th Cir. 2014) (holding that petitioner must state specifically what an investigation would have revealed and how it would have benefitted his defense); *see also U.S. v. Gulley*, 526 F.3d 809, 820 (5th Cir. 2008) ("To establish prejudice, the defendant must offer more than mere speculation of lost witnesses, faded memories or misplaced documents; he must show an actual loss of evidence that would have aided the defense and that cannot be obtained from other sources.").

Eugene's claims that his trial counsel rendered ineffective assistance do not merit habeas relief.

### (3) Appellate counsel

Eugene argues that his appellate counsel deprived him of his right to file a petition for discretionary review (PDR). According to Eugene, his appellate counsel promised that she would file a PDR on his behalf but did not do so. By the time he found out from the TCCA that counsel had not filed a PDR, the PDR was time-barred. Eugene claims that but for his appellate counsel's error, he could have filed a PDR based on his trial counsel's ineffective assistance. He argues

that his appellate counsel's omission was intentional because she worked in the same office with his trial counsel.

The state habeas court found that Eugene's appellate counsel did not deprive him of his opportunity to file a PDR *pro se*. (D.E. 12-25 at 25–26, ¶¶ 11–17.) It found that Eugene's appellate counsel sent a letter to Eugene on August 11, 2017, informing him that she would file a PDR raising only the issue of court costs. (D.E. 12-25 at 25, ¶ 11; *Id.* at 27, ¶¶ 3–4.) The state habeas court found that counsel's letter advised Eugene that he could file his own PDR if he wished to raise the claim that his trial counsel provided ineffective assistance and informed him of the rules and deadlines that apply to a PDR. (D.E. 12-25 at 25, ¶ 11.) The state habeas court also found that Eugene's appellate counsel timely notified him of the appellate court's opinion by attaching it to her letter. (D.E. 12-25 at 25–26, ¶¶ 11, 16; *Id.* at 26–27, ¶¶ 1–2.)

The court presumes the state habeas court's factual findings to be correct. *See* 28 U.S.C. § 2254(e)(1). The court's own review of the record is consistent with the state habeas court's findings. Appellate counsel's letter to Eugene states that she would not raise the issue of ineffective assistance of trial counsel in the PDR and advised him to do so himself if he so wished. (D.E. 12-21 at 8–9.) Counsel's affidavit states that she did not hear from Eugene after she sent the letter. (D.E. 12-25 at 16.) Counsel decided not to file a PDR upon later review, finding "no nonfrivolous issue to support a PDR as to court costs." (D.E. 12-25 at 17.)

The state habeas court's conclusion is not contrary to clearly established Federal law. A Texas prisoner has no constitutional right to assistance of counsel in filing a PDR. *See Ross v. Moffitt*, 417 U.S. 600, 610 (1974) (the Constitution does not guarantee right to counsel over discretionary appeals, as opposed to direct appeals); *Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002) (denying the petitioner's § 2254 claim that appellate counsel did not notify him of the outcome of his appeal and the right to file for a discretionary

review). These decisions support the state court's denial of Eugene's application for a habeas relief.

In addition, Eugene raised the ineffective assistance of counsel claim as to his trial counsel on state habeas review. Eugene is not prejudiced by the lack of a PDR raising that claim.

### B. Trial court bias

Eugene argues in his response to the State's motion for summary judgment that the state habeas court was biased because it adopted the prosecution's proposed findings of fact without an evidentiary hearing.

To secure federal habeas relief on the basis of judicial impartiality, the petitioner must "establish that a genuine question exists concerning [the court's] impartiality." *Bigby v. Dretke*, 402 F.3d 551, 560 (5th Cir. 2005) (citing *Bracy v. Gramley*, 520 U.S. 899, 909 (1997)); *see also Richardson v. Quarterman*, 537 F.3d 466, 474 n. 4 (5th Cir. 2008) (holding that the constitutional due process requirements regarding judicial impartiality are narrower than the requirements for recusal). The mere fact that the state habeas court adopted the facts suggested by the State does not show that the state habeas court was biased against Eugene. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 572 (1985) ("[E]ven when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous."); *see also Nichols v. Scott*, 69 F.3d 1255, 1277 (5th Cir. 1995) (applying *Anderson* to deny a similar claim raised by a habeas petitioner).

Eugene has not shown that the state habeas court committed any error, much less a constitutional one. Thus, Eugene's claim is not cognizable in a federal habeas action. *See* 28 U.S.C. § 2241; *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Evans v. McCotter*, 790 F.2d 1232, 1238 n.6 (5th Cir. 1986).

Habeas relief is denied.

## 5. Conclusion

The court recommends that Davis's motion be granted and Eugene's petition be denied with prejudice. Any remaining motions are terminated as moot. Eugene has not met his threshold burden of demonstrating that the state habeas court's denial of these claims constituted an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. Similarly, Eugene has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, the undersigned recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Eugene v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on August ___6___, 2019.

Peter Bray
United States Magistrate Judge